## JUROVICH v STATE

Ohio Appeals, 7th Dist, Mahoning Co
Decided June 6, 1930

R. L. Thomas, Pros. Atty., Youngstown, for the State.

J. P. Barrett, Youngstown, for Jurovich.

ROBERTS, J.

Referring first to 8 R. C. L., 264, Section 273:

"It has been stated as a general rule in cases where the objection was to the particular sentence and not to the statute under which it was imposed, that a sentence which is within the limit fixed by statute is not cruel and unusual, and is therefore valid."

It may be remarked paranthetically in the instant case that the sentence both as to the fine and imprisonment was nearer the minimum than the maximum provided by statute. The text proceeds:

"And it has been held that this is true no matter how harsh and severe it may appear to be in a particular case, because the constitutional prohibition has reference to the statute fixing the punishment and not to the punishment assessed by the judge or court within the limits fixed by statute. If the statute is not in violation of the constitution then any punishment assessed by a court or judge within the limits fixed thereby, can not be adjudged excessive for the reason that the power to declare what punishment may be assessed against those convicted of crime is not a judicial power but a legislative power controlled only by the provisions of the constitution."

Reading now from page 265:

"Punishment by fine and imprisonment is not per se cruel and unusual. Punishment by imprisonment at hard labor is not per se criminal and unusual, as it operates when rightly regulated as a mitigation rather than an aggravation of the punishment involved in imprisonment, and is not of itself disgraceful or degrading but beneficial and humane."

Again, reading from page 266 of the same authority:

"In order, however, to justify the court in declaring a punishment cruel and unusual with reference to its duration, the punishment must be so disproportioned to the offense committed as to shock the moral sense of all reasonable men as to what is right and proper under the circumstances."

Turning now to Volume 16 Corpus Juris, page 1351:

"When a court of justice awards punishment for a breach of the law, the object is not vengeance. The purpose is to deter the person who has broken the law from a repetition of his act, and also to deter other persons from committing similar breaches of the law."

It might be suggested that reparation for the wrong done is sometimes mentioned as one of the objects, but ordinarily that is not important. Reading from page 1353 of the same volume:

"The provision of the Federal Constitution prohibiting cruel and unusual punishment and the levying of excessive fines is confined in its operation to the legislature and the judiciary of the United States and does not apply to legislation by a state. However, the provision of the Federal Constitution is addressed to the courts of the United States exercising criminal jurisdiction and is a limitation on their discretion."

Page 1354:

"It is difficult to define with precision what constitutes cruel and unusual punishment in the constitutional sense and in fact it has not been exactly decided. As a general rule, however, such provisions are directed not so much against the amount or duration as against the character of the punishment, and the fact that the punishment authorized by statute is severe does not make it cruel or unusual. Ordinarily cruel and unusual punishment seems to imply sometimes inhumane and barberous or some punishment unknown at common law, such as burning at the stake, braking at the wheel and the like. According to some authorities what in a particular case constitutes a cruel and unusual punishment under the constitutional provisions depends upon the facts and circumstances of the punishment itself and upon the nature of the act which is to be punished. The prohibition of the constitution unquestionably applies to punishments which amount to physical torture or to such as would by their character shock the minds of persons possessed of the ordinary feelings of humanity. However, the discretion of the legislature would not be interfered with by the court except in extreme cases and punishment is not to be regarded as either cruel or unusual because never inflicted before on a certain class of criminals."

Upon this subject it is said in the case of In re O'Shea, 11 Cal., 568:

"Cruel and unusual punishments are punishments of a barberous character and unknown to the common law. The word when it first found place in the bill of rights meant not a fine or imprisonment or both, but such punishment as that inflicted by the whipping post, the pillory, burning at the stake, braking of the wheel and the like, or quartering the culprit, cutting off his nose, ears or limbs or strangling him to death. It was such severe, cruel and unusual punishments as disgraced the citizens of former ages and made one shudder with horror to read them."

Other authorities are cited under this text to the same effect. In the case of **Ohio** v **Hogan, 63 Oh St, 202,** it is said by Spear, J, on page 218:

"The objection that the act prescribes a cruel and unusual punishment we think not well taken. Imprisonment at hard labor is neither cruel nor unusual. It may be severe in the given instance but that is a question for the law making power. The punishment to be effective should be such as would prove a deterrent."

Here we have the Supreme Court of Ohio making several important declarations upon the issue under consideration, first that this is a proposition for the legislature and not for the law making power, that hard labor is neither cruel or unusual, and again, that the punishment to be effective should be such as would prove a deterrent, and it may

be assumed to be within the common knowledge of the public generally that whatever may be said about the punishments which have ordinarily been inflicted for violations of the liquor law that they have not proven very effective as deterrents; that a large number of persons convicted are convicted of second or later offenses, so that it can not logically be said on that score that the punishment provided by the legislature is too severe.

Directing attention now to the case of **Madjorous v State, 113 Oh St, 427,** the syllabus reads:

"The prohibition against remission of fines and suspension of sentence provided in §6212-17 GC, is a valid exercise of legislative power and does not invalidate the operative provisions of that section."

And on page 432 in the opinion it is said:

"And the effect of the proposition urged upon the distribution of powers made by the constitution will become apparent when it is observed that indisputable also is it that the authority to define and fix the punishment for crime is legislative and includes the right in advance to bring within judicial discretion for the purpose of executing the statute, elements of consideration which would be otherwise beyond the scope of judicial authority, and that the right to relieve from the punishment fixed by law and ascertain according to the methods by it provided belongs to the executive department."

Here we have a late Supreme Court decision again declaring that the authority to define and fix the punishment for crime is legislative and not judicial.

Article 15, Section 9 of the Constitution of Ohio provides:

"The sale and manufacture for sale of intoxicating liquors as a beverage are hereby prohibited. The general assembly shall enact laws to make this provision effective."

As before suggested, the punishment has not ordinarily proven to be so severe as to be effective. The 242 U. S., 27, is also cited as being interesting upon this proposition, but time will not be taken to read from that authority.

Upon the question of cruel and unusual punishment something interesting may be found in the case of **Rosanski v State, 106 Oh St.** In the opinion on page 462 it is said:

"There has been a great deal of misguided sentiment foisted upon a patient people during these latter days about the constitutional rights and privileges of the criminal classes. If all the doctrines which are being used by attorneys representing liquor law violators should be adopted by the courts as the true interpretation of our sacred bill of rights, it would no longer be recognized as a charter of government and as a guarantee of protection of the weak against the aggressions of the strong, but rather as a charter of unbridled license and a certificate of character to the criminal classes.

The Federal bill of rights found in the first ten amendments of the Federal Constitution was designed for the protection of the people against the encroachments of tyrannical government, but it is not sought to interpret it as a shield of law violators from the enforcement provisions of statutes which are concededly valid. The Volstead Act has been pronounced valid and constitutional by the Supreme Court of the United States, and no one doubts the correctness of that judgment. The Crabbe Act in Ohio, supplemented by the Miller Act is in most respects identical with the provisions of the Volstead Act and is universally accepted by the bench and bar of Ohio as a valid enactment pursuant to the express power to enact appropriate legislation to enforce the provisions of the amendments. While it is firstly established that the enforcement laws are valid the actual enforcement is claimed to be prohibited by other constitutional grants unless such means only are employed as are proven to be ineffectual. Our state and federal constitution constitute the ground work upon which is rested the statute law defining crimes and making provisions for conviction and punishment. It is the purpose of the constitution to advance the cause of safe and ordinary government, not to thwart or render it impossible."

Upon this subject it is sufficient to say further that we do not find that these propositions raised, to-wit, that the punishment imposed or the constitutional prohibition is cruel and unusual in the manner of punishment provided for, and no reversible error is found upon this proposition.

There is another matter which suggests itself to me in furtherance of this proposition, that punishment should be such as to be in a reasonable measure effective that mercy and consideration may be properly extended to persons who commit crimes under great stress of circumstances, cases of hardship and in hot blood, but when

men, knowing well the provisions of the law in respect to the manufacture and traffic in intoxicating liquor and as a cold blooded proposition of making money, knowing that the enterprise in which they are about to engage or are engaged can do no possible good and ordinarily and usually will result in the end in enormous harm, men without excuses that may be recognized in some other cases, are not subjects for as great clemency and merciful consideration as some other offenses.

We do not understand that anything is claimed in this case so far as the weight of the evidence is concerned. This defendant was found in the basement in the operation of a large still, fifty-seven barrels of mash being found there, between eighty and ninety gallons of finished liquor and the product running from the still in a stream about the size of a lead pencil, and the three officers who made the raid testified that this man admitted ownership. It is true he testified in the trial, denying that he owned it and told some fanciful tale about meeting some men on the street, a stranger, offering him fifty dollars a week to work for him and he took him to this basement, but nevertheless he did not do anything and had been there several weeks. The story of the defense is impossible and there is no question concerning the guilt of the accused.

In this case the trial court gave to the jury the statutory definition of reasonable doubt. §13442-3 GC reads:

"A defendant in a criminal action is presumed to be innocent until he is proven guilty of the crime charged, and in the case of a reasonable doubt whether his guilt is satisfactorily shown, he shall be acquitted, but the effect of this presumption of innocence is only to place upon the State the burden of proving his guilt beyond reasonable doubt. In charging a jury the court shall state the meaning of presumption of innocence and read the foregoing definition of reasonable doubt."

The definition was read but it is said the court did not state to the jury the presumption of innocence. The court said this in the instructions to the jury:

"The burden of proof is upon the State. The defendant starts out with the presumption that he is innocent of the offense charged, and this presumption goes with and abides with him through all the steps of the trial until all the evidence given here shall satisfy you of his guilt to that degree of certainty known in law as beyond a reasonable doubt."

We think this was a satisfactory and sufficient definition of reasonable doubt, and no error occurred in this regard.

Finally it is said that the trial judge before imposing sentence did not inquire of the defendant if he had anything to say why sentence should not be imposed as provided by law. It is to be presumed that such was the fact, as the bill of exceptions indicates this was not done. We think this is a right which the defendant had and that he was improperly deprived of it. Having found no other reversible error in the case, this cause is only reversed and remanded for the purpose of complying with this provision of the statute and re-imposing the sentence.

POLLOCK and FARR, JJ, concur.